UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA ANN GROOM, | Case No. EDCV 17-1117 JC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

**I.  SUMMARY**

On June 7, 2017, plaintiff Barbara Ann Groom filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits.  The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion") (collectively "Motions").  The Court has taken the Motions under submission without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; June 7, 2017 Case Management Order ¶ 5.

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of Administrative Law Judge Lynn Ginsberg ("ALJ") in her administrative decision dated February 23, 2017 (AR 978-91) ("ALJ's Decision") are supported by substantial evidence and are free from material error.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On November 8, 2010, plaintiff filed applications for Supplemental Security Income and Disability Insurance Benefits, alleging disability beginning on December 23, 2004,[1] due to cervical spondylosis with neck pain and myelopathy, migraine headaches, arthritis, and heart valve problems. (Administrative Record ("AR") 152, 159, 217, 978-79). Multiple hearings have been held regarding plaintiff's applications for benefits. (AR 29-70 & 737-81 [April 10, 2012]; AR 782-96 [June 18, 2014], AR 693-736 [September 9, 2014]; AR 979, 1000-38, 1098 [October 28, 2016]). Three different Administrative Law Judges issued unfavorable decisions, the most recent of which is at issue here. (AR 9-15, 676-86, 978-91; see also AR 800-14, 1043-53). This Court has twice remanded the matter to the Social Security Administration ("SSA") for further administrative action due to errors in each of the first two administrative decisions. (AR 830-41, 1064-75). The Appeals Council, in turn, remanded the case each time for a new hearing. (AR 848, 1076).

On the most recent remand from the Appeals Council, the ALJ held a hearing on October 28, 2016 ("Hearing"), during which the ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert. (AR 979, 1000-38, 1098).

On February 23, 2017, the ALJ determined that plaintiff was not disabled. (AR 978-91). Specifically, the ALJ found that through the date of the ALJ's

---

[1]Plaintiff amended the alleged onset date to July 14, 2008. (AR 979).

2

Decision (1) plaintiff suffered from the following severe impairments: degenerative disc disease of the cervical spine, status post cervical spine surgery 3/24/2008, degenerative disc disease of the lumbar spine, osteoarthritis of the hands and joints, plantar fasciitis, migraines, bipolar disorder, history of polysubstance dependency, and history of elbow surgery and carpal tunnel releases (AR 981); (2) plaintiff's impairments, considered individually or in combination, did not meet or medically equal a listed impairment (AR 981-83); (3) plaintiff retained the residual functional capacity to perform light work (20 C.F.R. §§ 404.1567(b), 416.967(b)) with additional limitations[2] (AR 983); (4) plaintiff could not perform any past relevant work (AR 988); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically housekeeping cleaner, routing clerk, and dry cleaner (AR 989); and (6) plaintiff's statements concerning the intensity, persistence, and limiting effects of subjective symptoms were "not entirely consistent with the medical evidence and other evidence in the record. . . ." (AR 984).

## III. APPLICABLE LEGAL STANDARDS

### A. Administrative Evaluation of Disability Claims

To qualify for disability benefits, a claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

---

[2]More specifically, the ALJ determined that plaintiff: (i) could lift and carry up to 20 pounds occasionally and 10 pounds frequently; (ii) could stand and walk for six hours in an eight-hour workday with normal breaks; (iii) could never crawl, or climb ladders, ropes, or scaffolds; (iv) could occasionally balance, stoop, kneel, crouch, and climb ramps and stairs; (v) could to do frequent overhead reaching bilaterally; (vi) could frequently do handling and fingering bilaterally; (vii) could have occasional exposure to extreme cold, and occasional exposure to excessive vibration such as construction vibration and vibration from production machinery; (viii) could have no exposure to unprotected heights and could not use hazardous moving machinery such as large construction machinery and production machinery; (ix) was limited to unskilled work at all reasoning levels appropriate for unskilled work; and (x) could have occasional interaction with the public. (AR 983).

3

death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted). To be considered disabled, a claimant must have an impairment of such severity that she is incapable of performing work the claimant previously performed ("past relevant work") as well as any other "work which exists in the national economy." Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)).

To assess whether a claimant is disabled, an ALJ is required to use the five-step sequential evaluation process set forth in Social Security regulations. See Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citations omitted) (describing five-step sequential evaluation process) (citing 20 C.F.R. §§ 404.1520, 416.920). The claimant has the burden of proof at steps one through four – *i.e.*, determination of whether the claimant was engaging in substantial gainful activity (step 1), has a sufficiently severe impairment (step 2), has an impairment or combination of impairments that meets or equals a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1 (step 3), and retains the residual functional capacity to perform past relevant work (step 4). Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). The Commissioner has the burden of proof at step five – *i.e.*, establishing that the claimant could perform other work in the national economy. Id.

**B.     Federal Court Review of Social Security Disability Decisions**

A federal court may set aside a denial of benefits only when the Commissioner's "final decision" was "based on legal error or not supported by substantial evidence in the record." 42 U.S.C. § 405(g); Trevizo v. Berryhill, 871 F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted). The standard of review in disability cases is "highly deferential." Rounds v. Commissioner of Social Security Administration, 807 F.3d 996, 1002 (9th Cir. 2015) (citation and quotation marks omitted). Thus, an ALJ's decision must be

upheld if the evidence could reasonably support either affirming or reversing the decision. Trevizo, 871 F.3d at 674-75 (citations omitted). Even when an ALJ's decision contains error, it must be affirmed if the error was harmless. Treichler v. Commissioner of Social Security Administration, 775 F.3d 1090, 1099 (9th Cir. 2014) (ALJ error harmless if (1) inconsequential to the ultimate nondisability determination; or (2) ALJ's path may reasonably be discerned despite the error) (citation and quotation marks omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Trevizo, 871 F.3d at 674 (citation and quotation marks omitted). It is "more than a mere scintilla, but less than a preponderance." Id. When determining whether substantial evidence supports an ALJ's finding, a court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion[.]" Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (citation and quotation marks omitted).

Federal courts review only the reasoning the ALJ provided, and may not affirm the ALJ's decision "on a ground upon which [the ALJ] did not rely." Trevizo, 871 F.3d at 675 (citations omitted). Hence, while an ALJ's decision need not be drafted with "ideal clarity," it must, at a minimum, set forth the ALJ's reasoning "in a way that allows for meaningful review." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citing Treichler, 775 F.3d at 1099); id. ("A clear statement of the [ALJ's] reasoning is necessary because we can affirm the agency's decision to deny benefits only on the grounds invoked by the agency.") (citation omitted); see generally 42 U.S.C. § 405(b)(1) ("ALJ's unfavorable decision must, among other things, "set[] forth a discussion of the evidence" and state "the reason or reasons upon which it is based"); 20 C.F.R. § 404.953(a) ("The administrative law judge shall issue a written decision that gives the findings of fact and the reasons for the decision."); Securities and Exchange

Commission v. Chenery Corp., 332 U.S. 194, 196-97 (1947) (administrative agency's determination must be set forth with clarity and specificity).

A reviewing court may not conclude that an error was harmless based on independent findings gleaned from the administrative record. Brown-Hunter, 806 F.3d at 492 (citations omitted). When a reviewing court cannot confidently conclude that an error was harmless, a remand for additional investigation or explanation is generally appropriate. See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (citations omitted).

## IV. DISCUSSION

Plaintiff essentially contends that the ALJ failed properly to consider both plaintiff's age category at step five and plaintiff's statements regarding her subjective symptoms. (Plaintiff's Motion at 5-14). For the reasons discussed below, a third remand or reversal in this case is not warranted on either basis.

### A. The ALJ's Step Five Determination Is Free of Material Error

#### 1. Pertinent Law

At step five, the Commissioner must prove that other work exists in "significant numbers" in the national economy which could be done by an individual with the same residual functional capacity, age, education, and work experience as the claimant. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(a)(4)(v) & (g), 404.1560(c); 20 C.F.R. §§ 416.920(a)(4)(v) & (g), 416.960(c); Heckler v. Campbell, 461 U.S. 458, 461-62 (1983); see Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015) (describing legal framework for step five) (citations omitted). The Commissioner may satisfy this burden either by (1) referring to the Medical-Vocational Guidelines in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"); or (2) obtaining testimony from an impartial vocational expert ("vocational expert" or "VE") about the type of work such a claimant is still able to perform, as well as the availability of related

///

jobs in the national economy.  See Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1100-01).

The Grids set forth four tables – one for each exertion level (*i.e.*, sedentary, light, medium, and heavy work) – with rules that analyze whether jobs exist in significant numbers in the national economy for various standard combinations of vocational factors (*i.e.*, age, education, and work experience) and residual functional capacity (collectively "four factors").  See 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(a); see also Heckler, 461 U.S. at 461-62; Lockwood v. Commissioner of Social Security Administration, 616 F.3d 1068, 1071 (9th Cir. 2010) (citation omitted), cert. denied, 563 U.S. 975 (2011).  Where a claimant's particular combination of the four factors matches all of the criteria for a particular Grid rule, that rule effectively directs a conclusion as to whether there is sufficient work available that such a claimant could perform, and in turn, whether the claimant is presumptively disabled or not.  20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(a); see Heckler, 461 U.S. at 461-62; Lockwood, 616 F.3d at 1071 (citing id.).

Social Security regulations categorize claimants into three general age groups, specifically persons who are "younger [] (under age 50)," "closely approaching advanced age (age 50–54)," and of "advanced age (age 55 or older)." 20 C.F.R. §§ 404.1563(c)-(e), 416.963(c)-(e); Lockwood, 616 F.3d at 1071 (citation omitted).  A "borderline [age] situation" is presented where, like here, the claimant is "within a few days to a few months of reaching an older age category" and would be found "not disabled" if the category for plaintiff's *chronological* age were used, but "disabled" if the *older* age category were applied.  20 C.F.R. §§ 404.1563(b), 416.963(b) (emphasis added); Lockwood, 616 F.3d at 1071 (citation omitted).  In borderline cases an ALJ may not apply the age categories "mechanically," and has discretion to use the older age category rather than the category for the claimant's chronological age.  20 C.F.R. §§ 404.1563(b),

7

416.963(b) (emphasis added); Lockwood, 616 F.3d at 1071 (citation omitted). An ALJ is not *required* to use the older age category and need not explain in the decision why an older age category was not used. Lockwood, 616 F.3d at 1071-72 & n.n.2, 4 (citing 20 C.F.R. § 404.1563(b); Bowie v. Commissioner of Social Security, 539 F.3d 395, 399-401 (6th Cir. 2008)); Burkes v. Colvin, 2015 WL 2375865, at *1 (C.D. Cal. May 18, 2015) ("While the ALJ is required to consider use of an older age category in a borderline situation, the ALJ does not need to explain in a written decision why an older age category was not used.") (citing Lockwood, 616 F.3d at 1070, 1072-74). Nonetheless, in borderline cases the ALJ must actually "consider" whether to use the next older age category, and the ALJ's decision must reflect that such consideration did, in fact, occur – *e.g.*, that the ALJ (i) knew the case involved a borderline age situation and that he or she had discretion to use the older age category; (ii) did not "mechanically" apply the age categories; and (iii) actually "evaluat[ed] the overall impact of all the factors of [the claimant's] case." 20 C.F.R. §§ 404.1563(b), 416.963(b); see Lockwood, 616 F.3d at 1071-72 & n.4 ("plain language" of 20 C.F.R. § 404.1563(b) reflects that ALJ not require to do "anything more" than "show [] that she considered whether to use the older age category") (citations omitted).

### 2. Analysis

Here, the parties do not genuinely dispute that plaintiff's case involved a "borderline [age] situation" at the time the ALJ's Decision was issued. (See Plaintiff's Motion at 5-6 [noting "Plaintiff was 54 days short of her 55[th] birthday" on the date of the ALJ's decision and once plaintiff turned 55 she would be found presumptively "disabled" under Grid Rule 202.06]; Defendant's Motion at 2, 4). Plaintiff essentially argues that the ALJ's Decision fails properly to reflect that the ALJ considered whether to use the older age category at step five given plaintiff's "borderline situation." (See Plaintiff's Motion at 6 [ALJ's decision "does . . . [not] remotely address the requirements of 20 C.F.R. Section

404.1563(b) pertaining to the non mechanical application of the Grid Rules in a borderline age situation"]; 9 [ALJ "committed reversible error in failing to include in her decision any explanation whatsoever that the borderline age situation in this case was considered"], 11 [ALJ failed properly to consider plaintiff's borderline age "in combination with the fact that Plaintiff had not engaged in any substantial gainful activity for approximately 13 years" and ALJ failed to provide "any explanation whatsoever . . . that Plaintiff's borderline age was even considered"]). Notwithstanding the foregoing, a reversal or remand is not warranted on such basis since there is substantial evidence in the record that the ALJ satisfied her burden to "consider" whether to use the older age category in plaintiff's case.

      First, the record reflects the ALJ was fully aware that plaintiff's case involved a borderline age situation. The transcript from the October 8, 2016 Hearing reflects that the ALJ extensively examined plaintiff about her age and that the ALJ was clearly aware of the age categories that applied at various points in time in plaintiff's case. (See AR 1005 [eliciting plaintiff's date of birth]; AR 1004-05 [noting that plaintiff had been 42 years old on the original alleged onset date of December 23, 2004]; AR 1005-06 [noting that plaintiff had still been "a younger individual" when the alleged onset date had been "amended [] to July 17 of 2008"]; AR 1005-06 [explaining that plaintiff had "crossed over an age category [to] . . . an individual . . . closely approaching advanced age" when plaintiff turned 50 years old on her birthday in April 2012 and that "for Social Security purposes [plaintiff] became the older age the day before [her] actual birthday"]; cf., e.g., AR 1029 [ALJ "recogniz[ing] that the [plaintiff] would grid once [she] turn[ed] 50 in April 2012"). In addition, at the beginning of the Hearing, the ALJ specifically stressed that she would be "carefully reviewing all the evidence, weighing and evaluating all the opinions, listening to [plaintiff's] testimony [that day], considering [plaintiff's] prior testimony, listening to the testimony of the vocational expert, and considering the totality of the evidence in

9

making [her] decision." (AR 1004). In addition, the ALJ's Decision issued less than four months after the Hearing expressly mentioned plaintiff's date of birth and noted that plaintiff "was 46 years old" on the amended alleged onset date which Social Security regulations "defined as a younger individual age 18-49," and observed that plaintiff had "subsequently changed age category to closely approaching advanced age." (AR 989). It is reasonable to infer from the foregoing that when the ALJ's Decision was issued, the ALJ was clearly aware that plaintiff was just shy of her 55th birthday, and that on her birthday that year plaintiff would become a person of advanced age.

Second, the ALJ cited 20 C.F.R. §§ 404.1563, 416.963 which prohibit applying the age categories mechanically in borderline situations. (AR 989). This supports a presumption that when the ALJ's Decision issued, the ALJ knew she had discretion "to use the older age category after evaluating the overall impact of all the factors of [plaintiff's] case." Lockwood, 616 F.3d at 1072 & n.3 ("We presume that ALJs know the law and apply it in making their decisions.") (citing Walton v. Arizona, 497 U.S. 639, 653 (1990), overruled on other grounds by Ring v. Arizona, 536 U.S. 584, 609 (2002)).

Finally, there is also substantial evidence that the ALJ did not "apply the age categories mechanically" because the ALJ "evaluat[ed] the overall impact of all the factors of [plaintiff's] case" by relying on the testimony of a vocational expert before finding that plaintiff was not disabled. See id. at 1072 (quotation marks and footnote omitted).

To the extent plaintiff argues that the ALJ "committed reversible error" by violating certain requirements set forth in two SSA internal guidance documents – *i.e.*, the Program Operations Manual System ("POMS") and the Hearings, Appeals, and Litigation Manual ("HALLEX") (Plaintiff's Motion at 7-9), such an argument lacks merit. See, e.g., Lockwood, 616 F.3d at 1072-73 (HALLEX and

///

POMS "[do] not impose judicially enforceable duties" on federal court or ALJ regarding borderline situations) (citations omitted).

Accordingly, a reversal or remand is not warranted on this ground.

**B.     The ALJ Properly Evaluated Plaintiff's Subjective Symptoms**

Plaintiff contends that a remand or reversal is warranted because the ALJ failed properly to consider plaintiff's subjective statements. (Plaintiff's Motion at 12-14). The Court disagrees.

**1.     Pertinent Law**

When determining disability, an ALJ is required to consider a claimant's impairment-related pain and other subjective symptoms at each step of the sequential evaluation process. 20 C.F.R. §§ 404.1529(a) & (d), 416.929(a) & (d). Accordingly, when a claimant presents "objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms [the claimant] alleged," the ALJ is required to determine the extent to which the claimant's statements regarding the intensity, persistence, and limiting effects of her symptoms ("subjective statements" or "subjective complaints") are consistent with the record evidence as a whole and, consequently, whether any of the individual's symptom-related functional limitations and restrictions are likely to reduce the claimant's capacity to perform work-related activities. 20 C.F.R. §§ 404.1529(a), (c)(4), 416.929(a), (c)(4); Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *4-*10; SSR 96-7p, 1996 WL 374186, at *1-*5.[3] When an

---

[3]Social Security Rulings reflect the SSA's official interpretation of pertinent statutes, regulations, and policies. 20 C.F.R. § 402.35(b)(1). Although they "do not carry the 'force of law,'" Social Security Rulings "are binding on all components of the . . . Administration[,]" and are entitled to deference if they are "consistent with the Social Security Act and regulations." 20 C.F.R. § 402.35(b)(1); Bray v. Commissioner of Social Security Administration, 554 F.3d 1219, 1224 (9th Cir. 2009) (citations and quotation marks omitted); see also Heckler, 465 U.S. at 873 n.3 (discussing weight and function of Social Security rulings). Social Security Ruling 16-3p superseded SSR 96-7p and, in part, eliminated use of the term "credibility" from SSA
(continued...)

individual's subjective statements are inconsistent with other evidence in the record, an ALJ may give less weight to such statements and, in turn, find that the individual's symptoms are less likely to reduce the claimant's capacity to perform work-related activities. See SSR 16-3p, 2017 WL 5180304, at *8; SSR 96-7p, 1996 WL 374186, at *1-*3. In such cases, when there is no affirmative finding of malingering, an ALJ may "reject" or give less weight to the individual's subjective statements "only by providing specific, clear, and convincing reasons for doing so." Brown-Hunter, 806 F.3d at 488-89.[4]

If an ALJ's evaluation of a claimant's statements is reasonable and is supported by substantial evidence, it is not the court's role to second-guess it. See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

///
///
///

---

[3](...continued) "sub-regulatory policy[]" in order to "clarify that subjective symptom evaluation is not an examination of an individual's [overall character or truthfulness] . . . [and] more closely follow [SSA] regulatory language regarding symptom evaluation." See SSR 16-3p, 2017 WL 5180304, at *1-*2, *10-*11. The SSA recently republished SSR 16-3p making no change to the substantive policy interpretation regarding evaluation of a claimant's subjective complaints, but clarifying that the SSA would apply SSR 16-3p only "[when making] determinations and decisions on or after March 28, 2016[,]" and that federal courts should apply "the rules [regarding subjective symptom evaluation] that were in effect at the time" an ALJ's decision being reviewed became final. SSR 16-3p, 2017 WL 5180304, at *1, *13 n.27. Such language suggests that SSR 16-3p is not retroactive in certain circumstances. Nonetheless, the issue of retroactivity need not be resolved here since neither party contends that SSR 16-3p should apply in this case, and the ALJ's evaluation of plaintiff's subjective complaints passes muster whether SSR 16-3p or its predecessor, SSR 96-7p, governs.

[4]It appears to the Court, based upon its research of the origins of the requirement that there be "specific, clear and convincing" reasons to reject or give less weight to an individual's subjective statements absent an affirmative finding of malingering, that such standard of proof remains applicable irrespective of whether SSR 96-7p or SSR 16-3p governs. See Trevizo, 871 F.3d at 678-79 & n.5 (citations omitted).

## 2. Analysis

Here, plaintiff says the ALJ materially erred in evaluating plaintiff's subjective complaints for essentially three reasons – none of which justifies a remand in the instant case.

For instance, plaintiff contends that the ALJ "failed to specify which [of plaintiff's] allegations of pain and or other symptoms he [sic] found not credible." (Plaintiff's Motion at 13). Curiously, in her own briefing plaintiff did not identify which specific subjective complaint(s) she believed the ALJ improperly rejected. (Plaintiff's Motion at 12-14). In addition, plaintiff asserts she "consistently maintained" that she was disabled due to "a combination of [unspecified] physical and mental impairments" but only provides citations to plaintiff's entire testimony at three hearings, an entire function report prepared by plaintiff, two cryptic disability reports, and the last page of an unspecified form. (Plaintiff's Motion at 12) (citing AR 32-55, 217, 243, 254-61, 273, 701-714, and 1007-1021"). Such sweeping and conclusory argument is insufficient to justify a remand here. See Carmickle v. Commissioner of Social Security Administration, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address challenge to ALJ's finding where claimant "failed to argue th[e] issue with any specificity in [] briefing") (citation omitted); Independent Towers of Washington v. Washington, 350 F.3d 925, 929 (9th Cir. 2003) (appellate courts "review only issues which are argued specifically and distinctly in a party's opening brief.") (citations omitted); Carmen v. San Francisco Unified School District, 237 F.3d 1026, 1030-31 (9th Cir. 2001) (on summary judgment parties must provide citations to location in record where specific facts may "conveniently be found" and court may limit its review to those parts of the record the parties have "specifically referenced"); Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996) (district court not required to "scour the record" on summary judgment where party has failed to identify specific record evidence with reasonable particularity) (citations omitted).

| | |
|---|---|
| 1 | Plaintiff also asserts "notwithstanding his [sic] conclusory assertion to the |
| 2 | contrary, the ALJ's discussion of plaintiff's credibility in the body of the hearing |
| 3 | decision does not reflect consideration or application of the factors mandated by |
| 4 | Social Security Ruling 96-7P." (Plaintiff's Motion at 13). Plaintiff's Motion |
| 5 | again provides no specific argument regarding how the ALJ specifically erred in |
| 6 | such respect, and thus fails to persuade the Court that a remand is warranted here. |
| 7 | See, e.g., DeBerry v. Commissioner of Social Security Administration, 352 Fed. |
| 8 | Appx 173, 176 (9th Cir. 2009) (declining to consider claim that ALJ failed |
| 9 | properly to apply Social Security Ruling where claimant did not argue the issue |
| 10 | "with any specificity" in her opening brief and failed to cite "any evidence or legal |
| 11 | authority" in support of her position) (citing Carmickle, 533 F.3d at 1161 n.2); |
| 12 | Brollier v. Astrue, 2013 WL 1820826, at *6 & n.113 (N.D. Cal. Apr. 30, 2013) |
| 13 | (court not required to consider "conclusory unsupported arguments" where |
| 14 | claimant "fail[ed] to provide any analysis supporting [his position] or argue that |
| 15 | [ALJ's alleged error] would necessarily have altered the ALJ's ultimate |
| 16 | determination") (citation omitted); see generally Independent Towers of |
| 17 | Washington, 350 F.3d at 929 (party's "bare assertion of an issue" in briefing "does |
| 18 | not preserve a claim" on appeal) (citations omitted); Moody v. Berryhill, |
| 19 | 245 F. Supp. 3d 1028, 1032–33 (C.D. Ill. 2017) ("The Court 'cannot fill the void |
| 20 | [in a claimant's analysis] by crafting arguments and performing the necessary legal |
| 21 | research.'") (citing Anderson v. Hardman, 241 F.3d 544, 545 (7th Cir. 2001)); |
| 22 | Rogal v. Astrue, 2012 WL 7141260, *3 (W.D. Wash. Dec. 7, 2012) ("It is not |
| 23 | enough merely to present an argument in the skimpiest way, and leave the Court to |
| 24 | do counsel's work–framing the argument and putting flesh on its bones through a |
| 25 | discussion of the applicable law and facts.") (citations omitted), report and |
| 26 | recommendation adopted, 2013 WL 557172 (W.D. Wash. Feb. 12, 2013), aff'd, |
| 27 | 590 Fed. Appx. 667 (9th Cir. 2014). |
| 28 | /// |

Finally, plaintiff argues "the ALJ did not state clear and convincing reasons for rejecting Plaintiff's testimony." (Plaintiff's Motion at 13). Such conclusory assertion, however, somewhat mischaracterizes the ALJ's Decision and, in any event, as discussed below, is belied by the record.

First, plaintiff argues that the ALJ "summarily reject[ed] all of [plaintiff's] subjective statements . . . regarding her symptoms and limitations which would preclude her from sustaining full time competitive employment, simply based upon the ALJ's apparent perception that [plaintiff's] statements exceed the 'objective medical evidence.'" (Plaintiff's Motion at 13, 14). However, the ALJ's Decision actually explained in some detail how the ALJ's residual functional capacity assessment for plaintiff accounted for – and thus did not reject – many of plaintiff's specific subjective complaints. (AR 987-88). Plaintiff has not shown that such analysis failed to address any specific impairment which caused functional limitation beyond that already accounted for in the ALJ's residual functional capacity assessment, much less that any such error was at all harmful. See generally McLeod v. Astrue, 640 F.3d 881, 887 (9th Cir. 2011) ("Where harmfulness of [] error is not apparent from the circumstances, [claimant] seeking reversal must explain how the error caused harm.").

Second, the ALJ properly gave less weight to plaintiff's subjective complaints, in part, due to inconsistencies in plaintiff's statements. See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017) ("An ALJ may consider inconsistent statements by a claimant in assessing her credibility.") (citing Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001)); Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997) (in weighing plaintiff's credibility, ALJ may consider "inconsistencies either in [plaintiff's] testimony or between his testimony and his conduct"); SSR 16-3P, 2016 WL 1119029, at *8 (ALJ may consider "consistency of the individual's own statements" when "determining whether an individual's symptoms will reduce his or her

corresponding capacities to perform work-related activities"); SSR 96-7P, 1996 WL 374186, at *6. For example, as the ALJ noted, and contrary to plaintiff's complaints about disabling problems with her neck and upper extremities, plaintiff reported to one doctor that her elbow "ha[d] improved markedly[,]" and the following month the same doctor noted that plaintiff was "doing very well" and that he had "released [plaintiff] to her usual and customary duties." (AR 984, 987) (citing Exhibit 2F at 33-34 [AR 319-20]).

Third, the ALJ properly gave less weight to plaintiff's subjective complaints to the extent effective medical treatment alleviated plaintiff's symptoms. See Warre v. Commissioner of Social Security Administration, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling. . . .") (citations omitted); see, e.g., Bailey v. Colvin, 659 Fed. Appx. 413, 415 (9th Cir. 2016) (evidence that "impairments had been alleviated by effective medical treatment," to the extent inconsistent with "alleged total disability[,]" specific, clear, and convincing reason for discounting subjective complaints) (citing id.). For example, as the ALJ noted, plaintiff's allegations of disabling "neck symptoms and headaches" were inconsistent with plaintiff's "subjective" reports to her doctors that her pain had responded favorably to her conservative medication. (AR 987) (citing Exhibits 6F at 7 [AR 457 - noting "subjective" complaint of "neck pain" with "no radicular symptoms" and that pain "responds to Ibuprofen" and that plaintiff was "discharge[d]" after being prescribed only a refill of ibuprofen], 19F at 4 [AR 616 - noting plaintiff's subjective report of migraine headaches that were "relieved [with] Topamax and Imitrex"]). As the ALJ also noted, in the March 15, 2009 report of a comprehensive orthopedic evaluation plaintiff reportedly said that she had "neck pain and tingling and numbness in the arms and hands" from injuring her neck at work, she had been given "five epidural steroid injections which did not help" and her condition "failed to improve on March 24, 2007," but plaintiff also stated that

16

her "arm symptomology got significantly better" after plaintiff had surgery (*i.e.*, "anterior cervical diskectomy and fusion in C6-C7"). (AR 477).

Fourth, the ALJ properly gave less weight to plaintiff's subjective statements to the extent plaintiff failed to seek a level or frequency of medical treatment that was consistent with the alleged severity of plaintiff's subjective symptoms. See Molina, 674 F.3d at 1113 (ALJ may properly consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" when evaluating claimant's subjective complaints) (citations and internal quotation marks omitted); SSR 16-3p, 2016 WL 1119029, at *7-*8 (ALJ may give less weight to subjective statements where "the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms. . . ."); SSR 96-7p, 1996 WL 374186, *7 (A "[claimant's] statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure."). For example, the ALJ noted that the most recent medical evidence added to the record "show[ed] sparse treatment and lack of medications. . . ." (AR 987; AR 986 [ALJ stating "the objective treatment record shows that the [Plaintiff's] condition seems to have improved, judging by the sparse treatment other than emergency room visits on multiple occasions for essentially unrelated complaints, such as a broken finger and sinusitis"]; see also AR 985 (citing Exhibits 31F [AR 1160-77], 33F at 1 [AR 1181], 34F at 17 [AR 1231], 35F at 12 & 25 [AR 1259, 1272], 36F at 3 [AR 1299])). The ALJ also noted that plaintiff was "not under mental health treatment, such as with medications," that "there [was] no history of any psychiatric hospitalizations," and consequently that "[plaintiff's] symptoms [were] seemingly managed without any concerted mental health treatment. . . ." (AR 986). Plaintiff

17

testified at the Hearing that she had not sought mental health consistently, had never been to a mental health clinic, and at that time was not taking any medication for psychological symptoms. (AR 1014-15). Plaintiff also testified that she had attempted "to get to the doctor so [she] could get some medication for depression" but had been unable to do so because she kept "getting the same runaround" when trying to schedule an appointment. (AR 1014). An ALJ may not reject symptom testimony when a claimant provides "evidence of a good reason" for not pursuing treatment. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted). Here, however, the ALJ reasonably found that since plaintiff had been able to obtain cosmetic dental work and other medical care, "there [was] no good reason as to why [plaintiff] would be unable to access mental health treatment if she felt the need to do so." (AR 986).

Fifth, at the Hearing, the ALJ found "[plaintiff] coherent despite not being on any medications [for her mental health]." (AR 986). The ALJ was permitted to rely on her own observations of plaintiff at the hearing as one of the several factors affecting plaintiff's credibility. See SSR 16-3p, 2016 WL 1119029, *7 (ALJ "will consider any personal observations of the [claimant] in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file."); see also Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (when evaluating symptom testimony ALJ may consider observations that claimant acted in manner at hearing that was inconsistent with alleged disabling symptoms) (citation omitted).

Finally, the ALJ properly gave less weight to plaintiff's subjective complaints due, in part, to the absence of supporting objective medical evidence. See Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider . . . ."); SSR 16-3p, 2016 WL 1119029, at *5 ("[ALJ may] not disregard an individual's statements about the intensity, persistence, and limiting effects of

symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual."); SSR 96-7p, 1996 WL 374186, at *6 (same).

Accordingly, a reversal or remand is not warranted on this basis.

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: March 27, 2018

/s/
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE